**GUZZETTA, Plaintiff-Appellant, v. GUZZETTA, Jr., Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23786.   Decided October 3, 1956.

George J. McMonagle, for plaintiff-appellant.
Bingham W. Zellmer, for defendant-appellee.

**OPINION**

By KOVACHY, PJ.:

This cause is an appeal on questions of law from a judgment of the Common Pleas Court granting a motion to quash service and dismissing the petition in an alimony action brought by the plaintiff-appellant, Lillian W. Guzzetta, on the grounds "that defendant was induced or enticed to come into the jurisdiction of this court by plaintiff on the 18th day of November, 1954, for the purpose of securing service of process on the defendant in the instant proceeding."

The facts essential for a proper consideration of this appeal are as follows: The plaintiff and defendant had been married. In an annulment proceeding in the State of New York some years ago the plaintiff was given custody of their only child, Kathy, with visitation rights to the defendant. At that time the plaintiff was living in Cleveland, and the defendant in Rochester, New York. Subsequently, the plaintiff was awarded an uncontested divorce here in Cleveland. No alimony rights were adjudicated in that action. The plaintiff continued living in Cleveland with Kathy, the defendant in Rochester. Under date of November 10, 1954, the plaintiff sent the defendant-appellee, Joseph L. Guzzeta, Jr., the following letter:

"I've just returned from Cal. and talked to Mr. McMonagle, he doesn't think that your to much concerned about Kathy Lee and that maybe I shouldn't write to you, because you don't care that much about her. Well even if you don't, I do care very very much about her and as yet I haven't said anything bad or harmful to her about you. We're both leaving here for good on the first of Dec., and are going to live in Lake Arrowhead, why don't you try to see her before we leave and buy her something real nice for Xmas, she has everything she needs or wants now, but up there they teach you to ski two hrs a day at school, and she'll need the outfit, I can buy it for her but it would make her feel good if you did and she can take it with her. You hurt her very much when you didn't come or even send her a card on her First Holy Communion so try to make it up to her.

"Kathy Lee is such a lovely beautiful girl, that even though your folks don't like me, now that she'll be so far away and they may never see her, I want you to have this picture, because I know they'd like to have it."

The defendant on November 13, 1954, sent the following telegram to plaintiff:

"Will arrive Thursday morning November 18th. Please have Kathy ready to spend the day with me."
and in accordance therewith, he came to Cleveland on November 18th and went directly to plaintiff's home to get Kathy. In a discussion there with his former wife, he informed her for the first time that he had remarried and that his new wife was expecting a child. This information disturbed the plaintiff very much. The defendant also disclosed a desire to have Kathy visit him in New York for two weeks in the summertime and was told to discuss the matter with her attorney, Mr. George McMonagle. After this discussion, the plaintiff drove the defendant and Kathy downtown. Her intention to sue him for alimony was first formed after she "dropped him off downtown," prompted by the feeling that she was entitled to some financial settlement with him in view of these new developments in his life.

The bill of exceptions discloses that the defendant phoned Mr. McMonagle at 4:00 P. M. the same day and arranged to see him that afternoon to discuss the matter of Kathy's summer visitation in Rochester. The plaintiff, on the other hand, had been unable to reach Mr. McMonagle by telephone and so went directly to his office to tell him of her intention to bring suit for alimony against the defendant. She arrived shortly after defendant's phone call. At her request, Mr. Monagle filed a petition for alimony and arranged for immediate service of summons upon the defendant by the Sheriff of Cuyahoga County.

The defendant arrived at Mr. McMonagle's office at 4:30 P. M. He completed plans for Kathy's summer visitations and left. A Deputy Sheriff served the summons upon him as he was leaving the building.

While the petition was stamped "filed and summons issued November 18, 1954" by the Clerk of Courts, the jurat affixed to the petition was dated "this 17 day of November 1954." Mr. McMonagle's explanation, together with the sequence of events, demonstrates this to have been a mere inadvertence.

Ohio recognizes and follows the general rule that personal service obtained upon a defendant who is induced to come within the jurisdiction of a court through trickery, fraud or artifice is an abuse of process and will be set aside upon proper application. 32 O. Jur. 405-406, Sec. 31: **Johnson Maple Syrup Co. v. Grosvenor, 5 Abs 597**; Miami Powder Co. v. Griswold, 5 Ohio Dec. Rep. 532; Pilcher v. Graham, 18 O. C. C. Rep. 5; White v. Marshall, 23 O. C. C. Rep. 376; 11 U. of Cinn. L. Rev. 402-405.

The sole question presented to us is whether the trial court properly held that this rule of law was applicable to the facts submitted at the hearing on the motion to quash the personal service obtained upon the defendant in this jurisdiction.

The operative facts are not in dispute. Defendant came to Cleveland voluntarily for his own purposes. The plaintiff at the time of writing this letter had no thought of instituting legal proceedings against the defendant. The plaintiff first conceived the idea of filing the alimony action upon obtaining certain information voluntarily advanced by the

defendant after his arrival in Cleveland. The defendant went to plaintiff's attorney of his own accord to discuss a matter in the nature of a personal desire. Mr. McMonagle knew nothing of the prospective alimony action when he arranged over the telephone for the defendant to visit him in his office. The action was brought in haste for the purpose of obtaining service upon the defendant before he left for Rochester, New York.

These facts, in our opinion, completely refute the contention of the defendant that he was decoyed into this jurisdiction for the express purpose of obtaining service of summons upon him. His coming to Cleveland was not induced through trickery, fraud or artifice because it is clear that the invitation was extended in good faith and for the purposes stated. There is no evidence whatever that the plaintiff was resorting to trickery, deceit or artifice to get the defendant into this jurisdiction for the purpose of obtaining service upon him. To vitiate the personal service of summons upon a person in a foreign jurisdiction who is in the jurisdiction in response to an invitation extended him by a party to the action, an intent to trick and deceive him into coming for such purpose must have existed in the mind of the sender and the invitation itself must have been an integral part of the device or artifice employed to get the defendant into the foreign jurisdiction for the purpose of serving him with summons.

In Watkins v. North American Land and Timber Co. (Limited), 20 Times L. R. (Eng) 534 H. L., it was said:

"Where an invitation was issued to the defendant, who was a foreigner resident abroad and the general manager abroad of an English Company, by the directors of the Company to come within the jurisdiction with a real intention to discuss certain matters in difference between them and the defendant, although the directors also intended to serve him with a writ and the defendant came and was served with a writ, the Court refused to set aside the service."

The House of Lords affirmed the Court of Appeals dismissal of the appeal for the reason that the charge of fraud had not been proved.

The United States Circuit Court of Appeals in Commercial Mutual Accident Company v. Davis, 213 U. S. 245, stated:

"While service of process on one induced by artifice or fraud to come within the jurisdiction of the court will be set aside, this court will not reverse the finding of the trial court that there was no such fraud where, as in this case, there is testimony supporting it."

A similar result was reached by The Supreme Court of Iowa in the case of Crandell v. Trowbridge, 170 Iowa Reports 155. The syllabus reads:

"Service of process secured through the trickery, deceit or fraud of a party or those acting for him, does not give the court jurisdiction. Record reviewed and held to show that jurisdiction attached—that no fraud had been practiced."

21 R. C. L. 1276 states:

"Fraud and fraudulent intent and purpose may be inferred from the acts and representations of the parties and all the facts and circumstances shown. But as between honest and dishonest motives and purposes, honesty of intent and purpose will be presumed unless the facts

and circumstances are such as to satisfy the mind that the acts and statements relied on are fraudulent or dishonest."

The judgment of the Common Pleas Court accordingly is reversed as contrary to law. The cause is remanded with instructions to vacate the order granting the motion to quash and set aside service of summons upon the defendant and dismissing the petition, to overrule said motion and for further proceedings according to law.

SKEEL, J, HURD, J, concur.